*In re* ANGELL.

131  345
e146 ⁶117

1. RECEIVERS—REMOVAL—DISCRETION OF COURT.
    The discretionary action of a circuit judge in removing a
    receiver will not be reversed, where it clearly appears that he
    did not accomplish what he ought to and would have accom-
    plished had he exercised the diligence of a prudent man in
    winding up a business of his own.

2. SAME—COMPENSATION—EX PARTE ORDER—MODIFICATION.
    An *ex parte* order fixing the compensation of a receiver may be
    modified, and the compensation reduced, on the final account-
    ing.

3. Same—Benefit Associations — Assessments—Lack of Diligence—Liability.

> A receiver of a mutual benefit association will be charged with assessments lost through his want of diligence in learning of the death of the debtors, and presenting the claims against their estates.

4. Receivers—Disbursements—Approval by Court.

> A receiver will be protected in the payment of attorney's fees, made after obtaining the approval of the bill by the court.

5. Benefit Associations—Compensation of Receiver.

> The question whether a receiver of a mutual benefit association was appointed under the statute relating to the voluntary dissolution of corporations (3 Comp. Laws, chap. 300), and his compensation therefore governed by section 10870, or was appointed under 2 Comp. Laws, § 7518 (part of the organic act of the association), and his compensation within the general jurisdiction of the court,—was raised, but not decided.

6. Corporations—Receivers—Extraordinary Services.

> Under 3 Comp. Laws, § 10870, providing that certain receivers shall be entitled to "such commissions as the court shall allow, not exceeding the sum allowed by law to executors and administrators," a receiver is not conclusively limited in his compensation to the commissions fixed by section 9438, but is within the further provision of said section authorizing such additional allowances for extraordinary services, not required of an executor or administrator in the common course of his duty, as the court may deem just and reasonable.

7. Same—Benefit Associations.

> An allowance of $125 per month, for a term of four years, to a receiver of a mutual benefit association, whose assets consisted principally of the right to levy and collect assessments, to enforce which he was obliged to prosecute extended litigation, was *held* reasonable and proper.

Appeal from Kent; Perkins, J. Submitted November 15, 1901. (Docket No. 125.) Decided September 17, 1902.

Petition by Crawford Angell and others, trustees of the Masonic Life Association, for the removal of Charles W. Calkins as receiver, and for an accounting. From the order made, both parties appeal. Modified and affirmed.

*Rood & Hindman,* for petitioners.

*Crane, Norris & Drew,* for respondent.

MOORE, J. December 12, 1896, Charles W. Calkins was appointed receiver of the Masonic Life Association by the circuit court of Kent county, in chancery, and entered upon the discharge of his duties. In September, 1899, he presented his report to the court appointing him, purporting to contain a statement of his receipts and disbursements up to that time. He asked that he be allowed a salary of $125 a month as receiver. One of the circuit judges indorsed upon said report as follows:

"The foregoing report and statement examined and approved, and the receiver's account as therein stated is allowed as correct, this 14th day of September, 1899.
                    "WM. E. GROVE,
                              "Circuit Judge."

The receiver, in June, 1900, presented a second report, which showed the receipts and disbursements from the 12th day of September, 1899, up to and including the 12th day of June, 1900. The receiver's affidavit, annexed to the account, stated that the same was a true account "from the 12th day of September, 1899, up to and including the 12th day of June, 1900," and that he had served in the capacity of receiver "from September 12, 1899, to June 12, 1900, a period of nine months." The receiver asked for a salary of $125 per month for five months to February 12, 1900, and "$200 per month for the remaining four months embraced in this report, for services." The circuit court made the following indorsement:

"The foregoing report and statement examined and approved, and the receiver's account as therein stated is allowed as correct, this 20th day of June, 1900, and his compensation is fixed as therein set forth.
                    "WILLIS B. PERKINS,
                              "Circuit Judge."

Thompson & Temple were the receiver's counsel. Their first bill against the receiver was presented September 14,

1899. That bill was intended "to cover all services to March 1, 1899, rendered said receiver." It amounted to $1,140. That bill contained an item: "To assisting in preparing and signing 1,850 circular letters, looking after replies from the same, consulting with parties in the office that called in response thereto." The circuit judge indorsed that bill as follows:

"The foregoing bill allowed at $1,000, dated September 14, 1899.                                    WM. E. GROVE,
                                              "Circuit Judge."

Thompson & Temple rendered a second bill to the receiver. The second bill was for services "from March 1, 1899, to June 12, 1900." That bill contained an item on its face for "writing and mailing 1,907 letters to collect assessments after the decision of the Supreme Court." The circuit judge indorsed this bill as follows: "O. K.   WILLIS B. PERKINS, Circuit Judge." On June 19th it was paid in full by the receiver.

August 17, 1900, the petitioners filed a petition asking for the removal of Mr. Calkins, and an accounting. A hearing was had in open court. October 9, 1900, the court made an order removing Mr. Calkins, and also passing upon his account. He reduced the compensation of $200 a month for four months, which he had allowed the receiver by the previous order, to $125 a month for all of the time which he served as a receiver. He also reduced the amount allowed by him in June, 1900, to Thompson & Temple to the sum of $500. He directed the receiver to file a final account. Mr. Taft was appointed as receiver, and Mr. Calkins was directed to turn over all the books and assets to him. Later Mr. Calkins filed a petition, in which he recited what had been done in the proceeding, and stated, among other things: "And your petitioner is ready and willing to comply with the order of the court, and turn over to his successor all property in his hands, or under his custody or control, belonging to the said Masonic Life Association;" and prayed, among other things, "that on filing the receipt of the new receiver for the balance, if

any, of the funds and property in your petitioner's hands, as determined after the allowance of said account and this petition, your petitioner's bond as receiver may be canceled, discharged, and surrendered." The final account was passed upon in February, 1901. March 23, 1901, the petitioners appealed. The receiver also appealed. The receiver claims that, under the evidence, the court should not have removed him. On the part of the petitioners it is urged that not only was the circuit judge justified in removing the receiver, but that the latter did not take his appeal from the order of removal in time, and also that, as he stated in his petition of October he was ready to comply with the order of the court which removed him, he is now estopped from raising the question.

It is not necessary to pass upon the last two contentions stated. In Beach on Receivers (section 782), it is said:

"Inasmuch as the appointment and removal of a receiver are matters which rest essentially in the discretion of the court, it is a general rule that a court of appeal will not review the questions which have been passed upon by a lower court in relation thereto; and the rule is the same whether the one party or the other—the party of the receiver or the party opposed—attempts to prosecute the appeal."

It is not necessary to say, if it clearly appeared that the circuit judge had abused his discretion in removing the receiver, we would not review his action. The circuit judge filed a written opinion, in which he said, among other things:

"A review of the proceedings in this case convinces me that at no time since his appointment has the receiver acted with that diligence and promptitude required of him under the plain terms of the statute and the well-understood rules of law regulating the duties of receivers; but, on the contrary, steps looking towards the performance of his duties have been delayed from time to time, until the expenses of the receivership have become and are out of all proportion to the services actually rendered."

Four years had elapsed after the appointment of the

receiver when the judge made the order of removal. We think it clear from the record that, though there was much for the receiver to do, he did not accomplish what he ought and would have accomplished had he exercised the diligence of a prudent man in winding up a business of his own. We are not inclined to say the circuit judge did not properly exercise his discretion in removing the receiver.

It is said that the court, after making an order granting the receiver $200 a month for four months, could not afterwards reduce the amount to $125 a month. The record discloses that this order was made *ex parte*. No one interested in opposing it had notice that the court proposed to make such an order. The circuit judge, in his later order, states that he was not advised of the facts when he made the *ex parte* order, and that, had he been, he would not have made the additional allowance. When the final order was made, the receiver was still an officer of the court, and was in the administration of the trust. The compensation allowed was generous for the work done. We do not think the court erred in modifying the earlier order.

The judge charged the receiver with several assessments which had been made and not collected. The persons against whom the assessments were made are dead, and left estates from which the assessments could have been collected if the claims had been properly presented. It is urged on the part of the receiver that he did not know of the death of these persons, and ought not to be charged with the assessments. The office of a receiver is not a perfunctory one. It was his duty to learn why the assessments were not paid, and in these instances, had he been diligent, he might have collected these claims. The court did not err in charging him with them.

We now come to the action of the court in surcharging the receiver with part of the attorney's fee paid by him to Thompson & Temple after their bill had received the O. K. of the circuit judge. A receiver is an officer of court, and amenable to it for a proper discharge of the trust

confided to him.   When he is in doubt as to what he ought
to do, he should take the advice of the court.   In this
case, before paying the counsel's fee, the receiver presented
it to the court, which passed upon it favorably before it
was paid by the receiver.   Under such circumstances, the
receiver ought not to be charged back with funds paid out
by him, and the order should be modified in that respect.

The remaining question to be considered is, Did the
court err in fixing the compensation of the receiver at $125
a month ?   It is the claim of petitioners that the receiver
is operating under the provisions of chapter 300, 3 Comp.
Laws, and that section 10870, reading as follows :   "Such
receivers shall, in addition to their actual disbursements,
be entitled to such commissions as the court shall allow,
not exceeding the sum allowed by law to executors and
administrators,"—fixes the measure of compensation, and
the receiver should receive only 5 per cent. on the first
$1,000 collected and accounted for by him, and 2½ per cent.
above that amount to $5,000, and for all above $5,000 at 1
per cent., in addition to a per diem charge of $1 per day.
It is not conceded by counsel for the receiver that this pro-
ceeding is governed by chapter 300, 3 Comp. Laws, but it
is contended that it comes under the organic act providing
for the organization of the association (see section 7518, 2
Comp. Laws), and that the court may not only appoint
the receiver, but may fix the amount of his compensation.

We do not deem it necessary to decide which of these
contentions is the proper one.   Section 9438, 3 Comp.
Laws, relating to the compensation of executors and
administrators, reads as follows :

"When no such compensation shall be provided by the
will, or the executor shall renounce all claim thereto, he
shall be allowed commissions upon the amount of personal
estate collected and accounted for by him,   *   *   *   as
follows :   For the first thousand dollars, at the rate of five
per cent.; for all above that sum, and not exceeding five
thousand dollars, at the rate of two and one-half per cent.;
and for all above five thousand dollars, at the rate of one
per cent.; and the same commissions shall be allowed to

administrators; and in all cases such further allowances may be made as the judge of probate shall deem just and reasonable for any extraordinary services, not required of an executor or administrator in the common course of his duty."

Should it be conceded that the provisions of this section should govern this proceeding, does it follow that the court did not have the right to grant to the receiver the compensation he did? The work done by the receiver was not according to the common course of the duty of an executor or administrator. The assets available to him consisted almost wholly of the right to levy and collect assessments for the purpose of paying liabilities. This involved dealing with nearly 2,000 people. The record discloses that the members of the association early decided not to pay any assessment, and it became necessary to institute legal proceedings to compel them to do so. It was not until one of those cases was followed by the receiver to this court (*Calkins* v. *Angell*, 123 Mich. 77 [81 N. W. 977]), that the receiver was able to collect a large proportion of the assessments. All this called for extraordinary services on the part of the receiver, for which he should be paid. *Wisner* v. *Mabley's Estate*, 70 Mich. 271 (38 N. W. 262). No one is in a position to know what allowances should be made so well as the court appointing the receiver. We think the compensation fixed by the court was earned, and should be paid.

The other questions raised have been considered, and will not be discussed. The order will be modified as indicated, and affirmed.

HOOKER, C. J., and GRANT, J., concurred. MONTGOMERY, J., did not sit.